**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MICHAEL S. SINGER,                    ) | |
|                                     ) | |
|                 Plaintiff,           ) | |
|                                       ) | |
|         v.                        ) | Civil Action No. 1:17-CV-10071-WGY |
|                                       ) | |
| CITY OF NEWTON,                ) | |
|                                       ) | |
|               Defendant        ) | |
|                                       ) | |

**DECLARATION OF LORETTA E. ALKALAY**

I, Loretta E. Alkalay, hereby declare and state the following is true:

1. I have been retained by the Plaintiff to provide my expert opinion. I am of legal age and competent to make this declaration.
2. My principal address is 140 Old Army Road, Scarsdale, New York.
3. I am currently an aviation attorney and independent consultant on federal aviation regulatory matters. I am also an adjunct professor at Vaughn College of Aeronautics and Technology in New York where I teach Aviation Law, Drone Law and Aviation Safety courses, among other courses.
4. Prior to these positions, I was an attorney for the Federal Aviation Administration [FAA] from 1978 to 2009. From 1987 to 2009, I was the Regional Counsel for the FAA's Eastern Region, Jamaica, N.Y. Among other duties, I was the top legal adviser for the Region responsible for prosecution of enforcement cases involving violations of the federal aviation regulations by corporate entities and individuals arising in seven states and the District of Columbia. I was also responsible for enforcement cases arising in Europe, the Middle East, Africa and parts of Asia. I was responsible for interpretations of federal laws and regulations on a broad range of aviation-related issues, including airports, environmental, procurement and personnel matters, and for issuing legal opinions to the public on a broad range of matters including federal preemption of state and local laws. I was responsible for assisting the Department of Justice in litigation involving FAA-related preemption issues.
5. I hold a B.A. from Cornell University, *cum laude* and with distinction in all subjects, and a J.D. from New York University School of Law. I hold an FAA Remote Pilot Certificate with sUAS rating. I am admitted to practice in New York State and in the Fourth and Second Circuits Courts of Appeals

6. I have reviewed the City of Newton's Ordinance No. A-97 [Ordinance] relating to the "operation of pilotless aircraft" and compared it to federal regulations applicable to operations of unmanned aircraft.

7. The Ordinance raises a number of concerns regarding its impact on aviation safety and efficiency, the ability of operators to comply with it and the City's ability to fairly enforce it.

8. The FAA has promulgated comprehensive regulations regarding the registration and operation of civil small unmanned aircraft systems within the United States. Those regulations are principally found in 14 C.F.R. Parts 48, 101 and 107 [Federal Aviation Regulations or FARs.]

9. On information and belief, the source of said information being conversations with plaintiff Dr. Michael Singer, the City of Newton did not consult with the FAA or aviation legal or technical experts prior to adopting this Ordinance.

10. In my opinion, the City should have consulted with the FAA and aviation legal and technical experts to ensure that the Ordinance was not preempted, that it did not adversely impact on safe and efficient aviation operations in the National Airspace System [NAS] and that it could be fairly enforced.

11. There are numerous issues raised by the Ordinance that affect the safety and efficiency of the NAS, compliance with both this Ordinance and federal regulations and fair enforcement of the Ordinance. For example, the Ordinance applies to "pilotless aircraft." The term "pilotless aircraft" is not a term used by the FAA to describe what are popularly known as drones and the apparent target of this Ordinance. The term "pilotless aircraft" not only differs from the official terminology used by the FAA but also conflicts with it. The term used by the FAA in its regulations is "unmanned aircraft," defined in 14 C.F.R. Part 1. Where "pilotless aircraft" is defined in Sec. 20-64 (1) of the Ordinance as "an unmanned, powered aerial vehicle, weighing less than 55 pounds, that is operated without direct human contact from within or on the aircraft," the federal regulation defines "unmanned aircraft" as "an aircraft operated without the possibility of direct human intervention from within or on the aircraft." The term "aircraft" is defined in the federal regulations as "a device that is used or intended to be used for flight in the air." The federal regulations further define "small unmanned aircraft" which definition is different than and conflicts with the Ordinance's definition of "pilotless aircraft." Specifically, "small unmanned aircraft (small UAS)" is defined as an "unmanned aircraft weighing less than 55 pounds *on takeoff, including everything that is on board or otherwise attached to the aircraft."* [emphasis added] Unlike the descriptor used in the Ordinance - - "pilotless" - the federal regulations that apply to commercial operations, as well as some hobby flights, specifically contemplate a "pilot" at the controls of the small UAS, albeit a remote pilot. See, 14 C.F.R. Sec. 107.12. Adding to the confusion and conflict, the Ordinance uses the word "vehicle" in its definition of "pilotless aircraft"; the FAA does not consider a "vehicle" – such as an ultralight regulated under 14 C.F.R. Part 103 – to be an aircraft.

12. The Ordinance's applicability to "pilotless aircraft" clearly differs and conflicts with federal regulations applicable to "small unmanned aircraft." The Ordinance creates

confusion for operators and makes compliance difficult.  It could also result in operators having to choose between compliance with federal regulations and the Ordinance.  The City's enforcement of the Ordinance would be difficult and potentially unfair because of likely confusion over the applicability of the Ordinance to the particular aircraft operation.

13. Another area of conflict between the Ordinance and federal regulations involves registration.  The FAA's registration regulations are extensively covered in 14 C.F.R. Parts 47 and 48 and differ from the requirements in the Ordinance Sec. 20-64 (2).  One difference is that federal registration of unmanned aircraft weighing .55 pounds or less is not required; the Ordinance requires registration of all "pilotless aircraft" even if they weigh .55 pounds or less.  The registration scheme under the Ordinance is also substantially different than the federal scheme and would result in confusion and difficulty in both compliance and enforcement.  For example, the Ordinance would require children under the age of 13 to register (with their names, addresses, emails and phone numbers potentially available under state freedom of information laws) where the federal regulations do not allow those under 13 to register. 14 C.F.R. Sec. 48.25(b).

14. The FAA specifically stated in a memo dated December 17, 2015, "because Federal registration is the exclusive means for registering UAS for purposes of operating an aircraft in navigable airspace, no state or local government may impose an additional registration requirement on the operation of UAS in navigable airspace without first obtaining FAA approval." https://www.faa.gov/uas/resources/uas_regulations_policy/media/uas_fact_sheet_final.pdf

15. The Ordinance also contains operating prohibitions which directly conflict with Parts 101 and 107 of the FARs.  According to the preamble to Parts 101 and 107, these regulations were specifically issued "to integrate UAS [unmanned aircraft systems] into the NAS [National Airspace System]" and "to allow for routine civil operation of small UAS in the NAS and to provide safety rules for these operations." https://www.faa.gov/uas/media/RIN_2120-AJ60_Clean_Signed.pdf, pages 9-10.  The FAA defines NAS as "the common network of U.S. airspace; air navigation facilities, equipment and services, airports or landing areas; aeronautical charts, information and services; rules, regulations and procedures, technical information, and manpower and material. Included are system components shared jointly with the military." FAA Pilot/Controller Glossary. https://www.faa.gov/air_traffic/publications/media/pcg.pdf

16. Among the areas of direct conflict with federal regulations, the Ordinance prohibits flights below 400 feet over private property "without the express permission of the owner." Ordinance, Sec. 20-64 (3)(a)(i). (Part 107 specifically requires most operations to remain below 400 feet. 14 C.F.R. Sec. 107.51(b).) In addition, the Ordinance prohibits, among other things, all flights over "any school, school grounds, or other City property or sporting event" without prior approval. Ordinance, Sec. 20-64(3)(a)(v). Furthermore, it delegates to the Chief of Police the authority to further prohibit operation even in areas allowed "during an impending or existing emergency, or when such use or operation would pose a threat to public safety." Ordinance, Sec. 20-64 (3)(b).  These prohibitions

directly conflict with federal regulations and would affect the safety and efficiency of the NAS.

17. Another Ordinance requirement that is confusing and conflicts with federal regulations is the prohibition on "pilotless aircraft" operating "at a distance beyond visual line of sight (VLOS) of the Operator." Ordinance, Sec. 20-64 3(a)(ii). Section 107.31(a) of the FARs requires – with one exception - that the pilot "with vision unaided by any device other than corrective lenses…must be able to see the unmanned aircraft throughout the entire flight…" The Ordinance confuses the ability to actually see the unmanned aircraft with the distance one could see it. (An exception in Section 107.31(b)(2) allows the pilot to operate without maintaining VLOS, so long as he or she uses a visual observer who does maintain VLOS. Here again, the Ordinance conflicts with the federal rule.)

18. Fair enforcement of the Ordinance would require technical expertise in many instances to determine whether a violation had occurred. For example, determining that a "pilotless aircraft" interfered with a manned aircraft [see, Sec. 20-64 (3)(a)(iii)] would require technical expertise to establish the altitude and location in the air of both the "pilotless aircraft" and the manned aircraft and technical expertise to determine that the "pilotless aircraft" had interfered with the manned aircraft.

19. The Ordinance's requirement in Sec. 20-64 (5) that "pilotless aircraft" comply with a local noise ordinance could affect the operations of small unmanned aircraft and thereby affect the safety and efficiency of their operations in the NAS. There are no federal noise regulations for small unmanned aircraft. The Supreme Court held in City of Burbank *et al*. v. Lockheed Air Terminal, Inc. *et al*. (1973) that local control of aircraft noise is federally preempted.

20. Based on the foregoing, it is my opinion that the Ordinance conflicts with federal regulations, negatively affects the safety and efficiency of the NAS and would be difficult for operators to comply with and for the City to fairly enforce.

21. I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements of fact are true, and that any foregoing statements based on my belief are believed to be true.


Executed on this 20 day of March 2017



Loretta E. Alkalay, Esq.