

U.S. Department
of Transportation

**Federal Aviation
Administration**

# LAW ENFORCEMENT GUIDANCE FOR SUSPECTED UNAUTHORIZED UAS OPERATIONS
## *Version 3 – Issued 8/11/2016*

### Issue

There is evidence of a considerable increase in the unauthorized use of small, inexpensive Unmanned Aircraft Systems (UAS or "drones") by individuals and organizations, including companies. The FAA retains the responsibility for enforcing Federal Aviation Regulations, including those applicable to the use of UAS. The agency recognizes though that State and local Law Enforcement Agencies (LEA) are often in the best position to deter, detect, immediately investigate,[1] and, as appropriate,[2] pursue enforcement actions to stop unauthorized or unsafe UAS operations.  The information provided below is intended to support the partnership between the FAA and LEAs in addressing these activities.

### Discussion

The general public, a wide variety of organizations, including private sector (e.g., commercial companies), non-governmental (e.g., volunteer organizations), and governmental entities (e.g., local agencies) continue to demonstrate significant interest in UAS. The benefits offered by this type of aircraft are substantial, and the FAA is committed to integrating UAS into the National Airspace System (NAS).  This integration, however, must address important safety and security considerations. The increasing number of cases of unauthorized use of UAS is a serious concern for the FAA and many of its interagency partners.

This document is intended to assist LEAs in understanding the legal framework that serves as the basis for FAA legal enforcement action against UAS operators for unauthorized and/or unsafe UAS operations (Section 1) and to provide guidance regarding the role of LEAs in deterring, detecting, and investigating unauthorized and/or unsafe UAS operations (Section 2).

### SECTION 1.

### Basic Legal Mandates

The FAA's safety mandate under 49 U.S.C. § 40103 requires it to regulate aircraft operations conducted in the NAS,[3] which include UAS operations, to protect persons and property on the ground, and to prevent collisions between aircraft and other aircraft or objects.  In addition, 49

---

[1] At least in terms of initial contact with the suspected offender.

[2] Applying any laws falling within the enforcement authority of the LEA in question.

[3] The NAS is "the common network of U.S. airspace; air navigation facilities, equipment and services, airports or landing areas . . . . Included are system components shared jointly with the military."  See FAA Pilot/Controller Glossary (Apr. 3, 2014), available athttp://www.faa.gov/air_traffic/publications/media/pcg_4-03-14.pdf.

U.S.C. § 44701(a) requires the agency to promote safe flight of civil aircraft in air commerce by prescribing, among other things, regulations and minimum standards for other practices, methods, and procedures the Administrator finds necessary for safety in air commerce and national security.[4]

### An Unmanned Aircraft is an Aircraft that Must Comply with Safety Requirements

An unmanned aircraft is an "aircraft" as defined in the FAA's authorizing statutes and is therefore subject to regulation by the FAA.  49 U.S.C. § 40102(a)(6) defines an "aircraft" as "any contrivance invented, used, or designed to navigate or fly in the air." The FAA's regulations (14 C.F.R. § 1.1) similarly define an "aircraft" as "a device that is used or intended to be used for flight in the air."  Because an unmanned aircraft is a contrivance/device that is invented, used, and designed to fly in the air, it meets the definition of "aircraft." In addition, on December 16, 2015, the FAA promulgated an Interim Final Rule (80 Fed. Reg. 78594) that defined Unmanned Aircraft, Model Aircraft, Small Unmanned Aircraft, and Small Unmanned Aircraft System in 14 C.F.R. § 1.1. The FAA has promulgated regulations that apply to the operation of all aircraft, whether manned or unmanned, and irrespective of the altitude at which the aircraft is operating. FAA regulations prohibit any person from operating an aircraft in a careless or reckless manner so as to endanger the life or property of another.

### Model Aircraft Operations

An important distinction to be aware of is whether the UAS is being operated for hobby or recreational purposes or for some other purpose. This distinction is important because there are specific requirements in the FAA Modernization and Reform Act of 2012, Public Law 112-95, (the Act) that pertain to "Model Aircraft" operations, which are conducted solely for hobby or recreational purposes.  While flying Model Aircraft for hobby or recreational purposes does not require FAA approval, all Model Aircraft operators must operate safely and in accordance with the law.  The FAA provides guidance and information to individual Model Aircraft operators about how they can operate safely under current regulations and laws.  Guidance may be found at:  http://www.faa.gov/uas/getting_started/fly_for_fun/.

Section 336(c) of the Act and 14 C.F.R. § 1.1 define "Model Aircraft" as an unmanned aircraft that is –

(1) Capable of sustained flight in the atmosphere;

(2) Flown within visual line of sight of the person operating the aircraft; and

(3) Flown for hobby or recreational purposes.

Each element of this definition must be met for a UAS to be considered a Model Aircraft under the Act and the regulation. Under Section 336(a) of the Act, the FAA is restricted from conducting further rulemaking specific to Model Aircraft as defined in Section 336(c) so long as the Model Aircraft operations are conducted in accordance with the requirements of Section 336(a). Section 336(a) requires that—

---

[4] FAA action on these security concerns support and are informed by the national defense, homeland security, and Law Enforcement statutory responsibilities and authorities of our interagency partners.

(1) The aircraft is flown strictly for hobby or recreational use;

(2) The aircraft is operated in accordance with a community-based set of safety guidelines and within the programming of a nationwide community-based organization;

(3) The aircraft is limited to not more than 55 pounds unless otherwise certified through a design, construction, inspection, flight test, and operational safety program administered by a community-based organization;

(4) The aircraft is operated in a manner that does not interfere with and gives way to any manned aircraft; and

(5) When flown within 5 miles of an airport, the operator of the aircraft provides the airport operator and the airport air traffic control tower (when an air traffic facility is located at the airport) with prior notice of the operation (model aircraft operators flying from a permanent location within 5 miles of an airport should establish a mutually-agreed upon operating procedure with the airport operator and the airport air traffic control tower (when an air traffic facility is located at the airport)).

### Model Aircraft that Operate in a Careless or Reckless Manner

Section 336(b) of the Act, however, makes clear that the FAA has the authority under its existing regulations to pursue legal enforcement action against persons operating Model Aircraft when the operations endanger the safety of the NAS, even if they are operating in accordance with Sections 336(a) and 336(c).  For example, a Model Aircraft operation conducted in accordance with Section 336(a) and (c) may be subject to an enforcement action if the operation is conducted in a careless or reckless manner so as to endanger the life or property of another.

### Commercial and Other Non-Model Aircraft UAS Operations

UAS operations that do not meet the definition of Model Aircraft, or are not conducted in accordance with Section 336(a) of the Act, may only be operated under FAA rules for UAS or with specific authorization from the FAA. UAS that are not flown for hobby or recreational purposes may be operated through one of four avenues:

1) **14 C.F.R. Part 107**: The new regulatory framework enables certain small UAS operations for commercial and other non-hobby purposes. The rule addresses airspace restrictions, remote pilot certification, and operational limits. Read the full regulation at https://www.federalregister.gov/articles/2016/06/28/2016-15079/operation-and-certification-of-small-unmanned-aircraft-systems

2) **Section 333 Exemptions**: The FAA issued these exemptions to authorize certain commercial operations as a bridge to 14 C.F.R. Part 107. These exemptions are valid for two years. Existing Section 333 exemption holders will still be able to operate under the terms of their exemption after Part 107 takes effect. UAS operators who have obtained an exemption must also obtain a Certificate of Waiver or Authorization (COA).

3) **Public Aircraft Operations**[5]: Public aircraft operators must obtain a COA prior to operations. Further information about public aircraft operations is available in Advisory Circular (AC) 00-1.1A, Public Aircraft Operations.

4) **Airworthiness Certification**: Some UAS are issued an airworthiness certificate that prescribes specific operational provisions for a particular aircraft. Operators of these aircraft must also obtain a COA.

It is important to understand that all UAS operations not operated as Model Aircraft under Section 336 of the Act are subject to current and future FAA regulation. At a minimum, any such flights are currently required under the FAA's regulations to be operated within the framework of one of the four means of authorization detailed above. Further, these flights must be conducted with an authorized aircraft (certificated or exempted), with a valid aircraft registration certificate and with a properly certificated pilot.

Regardless of the type of UAS operation, the FAA's statutes and the Federal Aviation Regulations prohibit any conduct that endangers individuals and property on the surface, other aircraft, or otherwise endangers the safe operation of other aircraft in the NAS. In addition, States and local governments are enacting their own laws regarding the operation of UAS, which may mean that UAS operations may also violate state and local laws specific to UAS operations, as well as broadly applicable laws such as assault, criminal trespass, or injury to persons or property.

## UAS Compliance with Airspace Security Requirements

As an aircraft, UAS operations (including those involving Model Aircraft) must be conducted in accordance with the airspace-centric security requirements prescribed by the FAA's regulations and various implementation tools used by the FAA, specifically including airspace with special flight rules and Notices to Airmen (NOTAM) that define Temporary Flight Restrictions (TFR). It is important that UAS operators and LEAs be familiar with the airspace restrictions respectively relevant to their operations and their enforcement area of responsibility.

Flight restrictions are used to protect, but are not limited to, special security events, sensitive operations (e.g., select Law Enforcement activity, space flight operations, etc.), and Presidential movement. The most up-to-date list of TFRs is available at http://tfr.faa.gov/tfr2/list.html.

See Attachment A for reference resources.[6]

---

[5] Exemptions under 14 CFR part 11 that rely on Section 333 (Special Rules for Certain Unmanned Aircraft Systems) of the Act for relief from the airworthiness certificate requirement.

[6] Attachment A also includes a NOTAM concerning avoidance (including no loitering) over power plants, dams, refineries, industrial complexes, and military facilities. Although not a restriction, this TFR urges aircraft operators to avoid these locations.

UAS Registration Requirements

All unmanned aircraft, including those operated exclusively as Model Aircraft, that weigh more than 0.55 pounds and are operated in the NAS must be registered with the FAA by their owner under either 14 C.F.R. Part 47 or Part 48.

The FAA will issue a unique registration number that begins with either an "N" "or "FA." These numbers must be placed on the unmanned aircraft to be readily visible, or they may be inside a battery compartment or other place in the aircraft, provided no tools are needed to open the compartment. The registration number will be unique to the operator if operating strictly as a Model Aircraft, and unique to the aircraft if operating other than as a Model Aircraft. The operator of the UAS must carry a Certificate of Aircraft Registration in either paper or electronic format and make it available to Law Enforcement upon request.

Failure to register a UAS, including Model Aircraft, in accordance with these rules may result in regulatory and criminal sanctions. The FAA may assess civil penalties up to $27,500. Criminal penalties include fines of up to $250,000 and/or imprisonment for up to three years.

More information about UAS registration can be found at https://registermyuas.faa.gov/

**SECTION 2.**

**The Role of Law Enforcement**

The FAA promotes voluntary compliance by educating individual UAS operators about how they can operate safely under current regulations and laws. The FAA also has a number of enforcement tools available including warning notices, letters of correction, and civil penalties. The FAA may take enforcement action against anyone who conducts an unauthorized UAS operation or operates a UAS in a way that endangers the safety of the National Airspace System. This authority is designed to protect users of the airspace as well as people and property on the ground.

As noted above, however, State and local LEAs are often in the best position to deter, detect, immediately investigate,[7] and, as appropriate,[8] pursue enforcement actions to stop unauthorized UAS operations. Although the FAA retains the responsibility for enforcing FAA's regulations, FAA aviation safety inspectors, who are the agency's principal field elements responsible for following up on these unauthorized and/or unsafe activities, will often be unable to immediately travel to the location of an incident.

While the FAA must exercise caution not to mix criminal law enforcement with the FAA's administrative safety enforcement function, the public interest is best served by coordinating and fostering mutual understanding and cooperation between governmental entities with Law Enforcement responsibilities. Although there are Federal criminal statutes that may be

---

[7] At least in terms of initial contact with the suspected offender.

[8] Applying any laws falling within the enforcement authority of the LEA in question.

implicated by some UAS operations (e.g., 49 U.S.C. § 46307), most violations of the FAA's regulations may be addressed through administrative enforcement measures. As with any other civil or criminal adjudication, successful enforcement will depend on development of a complete and accurate factual report contemporaneous with the event.

Although certainly not an exhaustive list, Law Enforcement officials, first responders, and others can provide invaluable assistance to the FAA and help deter unsafe UAS operations by taking the actions outlined below:

(1) **Witness Identification and Interviews.** Local Law Enforcement is in the best position to identify potential witnesses and conduct initial interviews, documenting what they observed while the event is still fresh in their minds. In addition, local Law Enforcement is in an optimum position to secure all information necessary for FAA safety inspectors to contact these witnesses in any subsequent FAA investigation. Administrative proceedings often involve very technical issues; therefore, we expect our own safety inspectors will need to re-interview most witnesses. We are mindful that in many jurisdictions, State law may prohibit the transmission of witness statements to third parties, including the FAA. In those circumstances, it is extremely important the FAA be able to locate and conduct independent interviews of witnesses.

(2) **Identification of Operators.** Law Enforcement is in the best position to locate the suspected operators of the aircraft, and any participants or support personnel accompanying the operators. Registration information collected from the device or from the operator can aid in identification and enforcement efforts by the FAA. We continue to identify operators engaged in commercial operations who have not received authorization from the FAA to do so. However, in our enforcement proceedings, we bear the burden of proof, and showing who actually operated the UAS is critical. Therefore, evidentiary thresholds must be met even when using data or video acquired via the internet. Likewise, the purpose for the operation (such as in support of a commercial venture, to further some business interest, or to secure compensation for their services) may become an important element in determining what regulations, if any, may have been violated by the operation. Identification and interview of suspected operators early on will help immeasurably to advance enforcement efforts.

(3) **Viewing and Recording the Location of the Event.** Pictures taken in close proximity to the event are often helpful in describing light and weather conditions, any damage or injuries, and the number and density of people on the surface, particularly at public events or in densely populated areas. During any witness interviews, use of fixed landmarks that may be depicted on maps, diagrams or photographs immeasurably help in fixing the position of the aircraft, and such landmarks also should be used as a way to describe lateral distances and altitude above the ground, structures or people (e.g., below the third floor of Building X; below the top of the oak tree located Y; or any similar details that gives reference points for lay witnesses).

(4) **Identifying Sensitive Locations, Events, or Activities.** The FAA maintains a variety of security-driven airspace restrictions around the country to help protect

sensitive locations, events, and activities through TFRs, Prohibited Areas, and other mechanisms such as the Washington, DC, Flight Restricted Zone (DC FRZ).  UAS operations, including Model Aircraft flights, are generally prohibited within these defined volumes of airspace.  LEAs should become familiar with the steady-state airspace restrictions active within their area of responsibility, along with as-needed TFRs, which could be instituted to help protect sensitive events (e.g., major gatherings of elected officials) and activities (e.g., Presidential movements).  If there is any question as to whether a TFR has been established in a given location, contact the nearest air traffic facility or flight service station for further information or visit http://tfr.faa.gov/tfr2/list.html for a graphic representation of TFRs locatable by state and effective dates.

(5) **Notification.** Immediate notification of an incident, accident or other suspected violation to one of the FAA Regional Operation Centers (ROC) located around the country is valuable to the timely initiation of the FAA's investigation. These centers are manned 24 hours a day, 7 days a week with personnel who are trained in how to contact appropriate duty personnel during non-business hours when there has been an incident, accident, or other matter that requires timely response by FAA employees. A list of these centers and telephone numbers is included as Attachment B to this letter.  FAA Law Enforcement Assistance Program (LEAP) Special Agents are also available to provide investigation support.  LEAP Special Agent contact information is included as Attachment C to this letter.

(6) **Evidence Collection.** Identifying and preserving any public or private security systems that may provide photographic or other visual evidence of UAS operations, including video or still picture security systems, can provide essential evidence to the FAA. Many times these systems do not permanently store information but erase it as the system recycles at a given interval. Local Law Enforcement is in the best position to inquire and make initial requests to identify and preserve this form of evidence or obtain legal process for securing this evidence in the context of an investigation of a possible violation of state criminal law. In addition, all UAS that weigh more than 0.55 pounds and are operated in the NAS must be registered with the FAA and must display identification numbers signifying FAA registration, and individuals operating a UAS must carry, in paper or electronic form, an FAA-issued aircraft registration certificate.  Note that identification numbers may not be conspicuous from a distance because of the size and non-traditional configuration of some UAS.

You can search the registration database for UAS assigned an "N-number" by using the "Look up N-numbers" search box on the FAA's homepage: www. faa.gov. UAS that have been assigned an "FA-number" registration can be verified by contacting your FAA LEAP Special Agent (See Attachment C).

Other investigative methods also may prove useful, such as consensual examination of the UAS, equipment trailers, and documentation. However, other Law Enforcement processes, such as arrest and detention or non-consensual searches almost always fall outside of the allowable methods to pursue administrative enforcement actions by the FAA unless they are truly a by-product of a State criminal investigation. We do not mean to discourage use of these methods and procedures where there is an independent basis for law enforcement officers to

use them under State or local law. We simply wish to emphasize that work products intended for FAA use generally should involve conventional administrative measures such as witness interviews, "stop and talk" sessions with suspected violators, consensual examination of vehicles and equipment, and other methods that do not involve court orders or the potential use of force by Law Enforcement personnel.

It is extremely difficult to provide a "one size fits all" guide to cooperative investigation of suspected unauthorized UAS operations considering the myriad jurisdictions and the associated statutory and constitutional restraints and requirements. State and local officials are urged to use their governmental unit's legal resources and their own management chain to develop acceptable protocols for dealing with these instances. In some situations, there may be legal bars to the sharing of some information or the use of databases designed for conventional Law Enforcement. However, with appropriate data collection during first responses and early reporting to the FAA, Federal, State and local agencies will be in the best position to both collect and share information that may be of interest to each jurisdiction. FAA aviation safety inspectors are adept at coordination with our own legal resources to ensure unauthorized UAS operators are properly accountable for the potential risk they create to both people and property. In addition, we have specially trained inspectors within the FAA UAS Integration Office who can provide expertise in this area.

If you have any questions or your agency would like to pursue advance planning on how to address these situations, please feel free to contact your local FAA LEAP Special Agent or the FAA's Law Enforcement Assistance Program Office at (202) 267-4641 or (202) 267-2480.

Attachment A.

**Excerpts**

**Presidential Movements**

FDC 4/7607 ZBW RI..AIRSPACE PROVIDENCE, RHODE ISLAND..TEMPORARY FLIGHT RESTRICTIONS. OCTOBER 16, 2014 LOCAL. THIS NOTAM REPLACES NOTAM 4/7600 DUE TO SCHEDULE CHANGE.  PURSUANT TO 49 USC 40103(B THE FEDERAL AVIATION ADMINISTRATION (FAA) CLASSIFIES THE AIRSPACE DEFINED IN THIS NOTAM AS 'NATIONAL DEFENSE AIRSPACE'. PILOTS WHO DO NOT ADHERE TO THE FOLLOWING PROCEDURES MAY BE INTERCEPTED DETAINED AND INTERVIEWED BY LAW ENFORCEMENT/SECURITY PERSONNEL. ANY OF THE FOLLOWING ADDITIONAL ACTIONS MAY ALSO BE TAKEN AGAINST A PILOT WHO DOES NOT COMPLY WITH THE REQUIREMENTS OR  ANY SPECIAL INSTRUCTIONS OR PROCEDURES ANNOUNCED IN THIS NOTAM:
A) THE FAA MAY TAKE ADMINISTRATIVE ACTION, INCLUDING IMPOSING CIVI PENALTIES AND THE SUSPENSION OR REVOCATION OF AIRMEN CERTIFICATES; OR
B) THE UNITED STATES GOVERNMENT MAY PURSUE CRIMINAL CHARGES, INCLUDING CHARGES UNDER TITLE 49 OF THE UNITED STATES CODE, SECTION 46307; OR
C) THE UNITED STATES GOVERNMENT MAY USE DEADLY FORCE AGAINST THE AIRBORNE AIRCRAFT, IF IT IS DETERMINED THAT THE AIRCRAFT POSE: AN IMMINENT SECURITY THREAT.
…
C. THE FOLLOWING OPERATIONS ARE NOT AUTHORIZED WITHIN THIS TFR: FLIGHT TRAINING, PRACTICE INSTRUMENT APPROACHES, AEROBATIC FLIGHT, GLIDER OPERATIONS, SEAPLANE OPERATIONS, PARACHUTE OPERATIONS, ULTRALIGHT, HANG GLIDING, BALLOON OPERATIONS, AGRICULTURE/CROP DUSTING, ANIMAL POPULATION CONTROL FLIGHT OPERATIONS, BANNER TOWING OPERATIONS, SIGHTSEEING OPERATIONS,MAINTENANCE TEST FLIGHTS, MODEL AIRCRAFT OPERATIONS, MODEL ROCKETRY, UNMANNED AIRCRAFT SYSTEMS (UAS), AND UTILITY AND PIPELINE SURVEY OPERATIONS.

10

**Excerpts**

| | |
|---|---|
| **DC FRZ** | FDC 0/8326 ZDC PART 1 OF 10 FLIGHT RESTRICTIONS, WASHINGTON, DC, EFFECTIVE 1012010401 UTC UNTIL FURTHER NOTICE. THIS NOTICE WILL REPLACE NOTAM 0/9477 DUE TO A CHANGE IN RESTRICTIONS. THIS NOTAM AND A NOTAM FOR THE LEESBURG MANEUVERING AREA SUPPLEMENT SUBPART V, 14 CFR PART 93 FOR THE WASHINGTON, D.C. SPECIAL FLIGHT RULES AREA (DC SFRA). PURSUANT TO 49 USC 40103(B), THE FAA HAS ESTABLISHED THE DC SFRA AREA AS 'NATIONAL DEFENSE AIRSPACE. ANY PERSON WHO DOES NOT COMPLY WITH THE REQUIREMENTS APPLICABLE TO THE DC SFRA MAY BE INTERCEPTED, DETAINED AND INTERVIEWED BY LAW ENFORCEMENT/SECURITY PERSONNEL. ANY OF THE FOLLOWING ADDITIONAL ACTIONS MAY ALSO BE TAKEN AGAINST A PILOT WHO DOES NOT COMPLY WITH THE REQUIREMENTS OR ANY SPECIAL INSTRUCTIONS OR PROCEDURES ANNOUNCED IN THIS NOTAM: A) THE FAA MAY TAKE ADMINISTRATIVE ACTION, INCLUDING IMPOSING CIVIL PENALTIES AND THE SUSPENSION OR REVOCATION OF AIRMEN CERTIFICATES; B) THE UNITED STATES GOVERNMENT MAY PURSUE CRIMINAL CHARGES, INCLUDING CHARGES UNDER TITLE 49 OF THE UNITED STATES CODE, SECTION 46307; C) THE UNITED STATES GOVERNMENT MAY USE DEADLY FORCE AGAINST THE AIRBORNE AIRCRAFT, IF IT IS DETERMINED THAT THE AIRCRAFT POSES AN IMMINENT SECURITY THREAT.<br><br>…<br><br>A. THE FOLLOWING OPERATIONS ARE NOT AUTHORIZED WITHIN THE DC FRZ: FLIGHT TRAINING, AEROBATIC FLIGHT, PRACTICE INSTRUMENT APPROACHES, GLIDER OPERATIONS, PARACHUTE OPERATIONS, ULTRA LIGHT, HANG GLIDING, BALLOON OPERATIONS, TETHERED BALLOONS, AGRICULTURE/CROP DUSTING, ANIMAL POPULATION CONTROL FLIGHT OPERATIONS, BANNER TOWING OPERATIONS, MAINTENANCE TEST FLIGHTS, MODEL AIRCRAFT OPERATIONS, MODEL ROCKETRY, FLOAT PLANE OPERATIONS, UNMANNED AIRCRAFT SYSTEMS (UAS) AND AIRCRAFT/HELICOPTERS OPERATING FROM A SHIP OR PRIVATE/CORPORATE YACHT. B. IT IS HIGHLY RECOMMENDED THAT A PILOT CONTINUOUSLY MONITOR VHF FREQUENCY 121.5 OR UHF FREQUENCY 243.0 FOR EMERGENCY INSTRUCTIONS WHEN OPERATING AN AIRCRAFT IN THE DC FRZ, EITHER IN AN AIRCRAFT THAT IS SUITABLY EQUIPPED, OR BY USE OF PORTABLE EQUIPMENT. |
| **Avoidance of Power Plants, etc.** *(Applied to all Aircraft, including UAS)* | FDC 4/0811 SPECIAL NOTICE. THIS IS A RESTATEMENT OF A PREVIOUSLY ISSUED ADVISORY NOTICE. IN THE INTEREST OF NATIONAL SECURITY AND TO THE EXTENT PRACTICABLE, PILOTS ARE STRONGLY ADVISED TO AVOID THE AIRSPACE ABOVE, OR IN PROXIMITY TO SUCH SITES AS POWER PLANTS (NUCLEAR, HYDRO-ELECTRIC, OR COAL), DAMS, REFINERIES, INDUSTRIAL COMPLEXES, MILITARY FACILITIES AND OTHER SIMILAR FACILITIES. PILOTS SHOULD NOT CIRCLE AS TO LOITER IN THE VICINITY OVER THESE TYPES OF FACILITIES. |

**Excerpts**

**Select Sporting Events**    FDC 4/3621 FDC SPECIAL SECURITY NOTICE. SPORTING EVENTS. THIS NOTAM REPLACES FDC NOTAM 9/5151 TO REFLECT A TSA WEBSITE UPDATE AND ADDITIONAL INFORMATION CONCERNING AIRSPACE WAIVERS. FLIGHT RESTRICTIONS IN THIS NOTAM COMPLY WITH STATUTORY MANDATES DETAILED IN SECTION 352 OF PUBLIC LAW 108-7 AS AMENDED BY SECTION 521 OF PUBLIC LAW 108-199. PURSUANT TO 49 USC 40103(B), THE FEDERAL AVIATION ADMINISTRATION (FAA) CLASSIFIES THE AIRSPACE DEFINED IN THIS NOTAM AS 'NATIONAL DEFENSE AIRSPACE'. ANY PERSON WHO KNOWINGLY OR WILLFULLY VIOLATES THE RULES PERTAINING TO OPERATIONS IN THIS AIRSPACE MAY BE SUBJECT TO CERTAIN CRIMINAL PENALTIES UNDER 49 USC 46307. PILOTS WHO DO NOT ADHERE TO THE FOLLOWING PROCEDURES MAY BE INTERCEPTED, DETAINED AND INTERVIEWED BY LAW ENFORCEMENT/SECURITY PERSONNEL. PURSUANT TO 14 CFR SECTION 99.7, SPECIAL SECURITY INSTRUCTIONS, COMMENCING ONE HOUR BEFORE THE SCHEDULED TIME OF THE EVENT UNTIL ONE HOUR AFTER THE END OF THE EVENT. ALL AIRCRAFT OPERATIONS; INCLUDING PARACHUTE JUMPING, UNMANNED AIRCRAFT AND REMOTE CONTROLLED AIRCRAFT, ARE PROHIBITED WITHIN A 3 NMR UP TO AND INCLUDING 3000 FT AGL OF ANY STADIUM HAVING A SEATING CAPACITY OF 30,000 OR MORE PEOPLE WHERE EITHER A REGULAR OR POST SEASON MAJOR LEAGUE BASEBALL, NATIONAL FOOTBALL LEAGUE, OR NCAA DIVISION ONE FOOTBALL GAME IS OCCURRING. THIS NOTAM ALSO APPLIES TO NASCAR SPRINT CUP, INDY CAR, AND CHAMP SERIES RACES EXCLUDING QUALIFYING AND PRE-RACE EVENTS. FLIGHTS CONDUCTED FOR OPERATIONAL PURPOSES OF ANY EVENT, STADIUM OR VENUE AND BROADCAST COVERAGE FOR THE BROADCAST RIGHTS HOLDER ARE AUTHORIZED WITH AN APPROVED AIRSPACE WAIVER. AN FAA AIRSPACE WAIVER DOES NOT RELIEVE OPERATORS FROM OBTAINING ALL OTHER NECESSARY AUTHORIZATIONS AND COMPLYING WITH ALL APPLICABLE FEDERAL AVIATION REGULATIONS. THE RESTRICTIONS DESCRIBED ABOVE DO NOT APPLY TO THOSE AIRCRAFT AUTHORIZED BY AND IN CONTACT WITH ATC FOR OPERATIONAL OR SAFETY OF FLIGHT PURPOSES, DEPARTMENT OF DEFENSE, LAW ENFORCEMENT, AND AIR AMBULANCE FLIGHT OPERATIONS. ALL PREVIOUSLY ISSUED WAIVERS TO FDC NOTAM 9/5151 REMAIN VALID UNTIL THE SPECIFIED END DATE BUT NOT TO EXCEED 90 DAYS FOLLOWING THE EFFECTIVE DATE OF THIS NOTAM. INFORMATION ABOUT AIRSPACE WAIVER APPLICATIONS AND TSA SECURITY AUTHORIZATIONS CAN BE FOUND AT HTTP://WWW.TSA.GOV/STAKEHOLDERS/AIRSPACE-WAIVERS-0 OR BY CALLING TSA AT 571-227-2071. SUBMIT REQUESTS FOR FAA AIRSPACE WAIVERS AT HTTPS://WAIVERS.FAA.GOV

**Excerpts**

**Disney Theme Parks**    FDC 4/XXXX ZZZ  SECURITY SPECIAL NOTICE  DISNEY WORLD THEME PARK ORLANDO FL THIS NOTAM REPLACES NOTAM 9/4985 TO REFLECT A TSA WEBSITE UPDATE AND ADDITIONAL INFORMATION CONCERNING AIRSPACE WAIVERS.  FLIGHT RESTRICTIONS IN THIS NOTAM COMPLY WITH STATUTORY MANDATES DETAILED IN SECTION 352 OF PUBLIC LAW 108-7 AS AMENDED BY SECTION 521 OF PUBLIC LAW 108-199. PURSUANT TO 49 USC 40103(B), THE FEDERAL AVIATION ADMINISTRATION (FAA) CLASSIFIES THE AIRSPACE DEFINED IN THIS NOTAM AS 'NATIONAL DEFENSE AIRSPACE'. ANY PERSON WHO KNOWINGLY OR WILLFULLY VIOLATES THE RULES PERTAINING TO OPERATIONS IN THIS AIRSPACE MAY BE SUBJECT TO CERTAIN CRIMINAL PENALTIES UNDER 49 USC 46307. PILOTS WHO DO NOT ADHERE TO THE FOLLOWING PROCEDURES MAY BE INTERCEPTED, DETAINED AND INTERVIEWED BY LAW ENFORCEMENT/SECURITY PERSONNEL.  PURSUANT TO 14 CFR SECTION 99.7, SPECIAL SECURITY INSTRUCTIONS, ALL AIRCRAFT FLIGHT OPERATIONS TO INCLUDE UNMANNED AND REMOTE CONTROLLED AIRCRAFT ARE PROHIBITED WITHIN A 3 NMR OF 282445N/0813420W OR THE ORL238014.8 UP TO AND INCLUDING 3000 FT AGL.  THE RESTRICTIONS DO NOT APPLY TO THOSE AIRCRAFT AUTHORIZED BY AND IN CONTACT WITH ATC FOR OPERATIONAL OR SAFETY OF FLIGHT PURPOSES, AND DEPARTMENT OF DEFENSE, LAW ENFORCEMENT, AND AIR AMBULANCE FLIGHT OPERATIONS.  FLIGHTS CONDUCTED FOR OPERATIONAL PURPOSES OF ANY DISNEY WORLD EVENT AND VENUE ARE AUTHORIZED WITH AN APPROVED WAIVER.  AN FAA AIRSPACE WAIVER DOES NOT RELIEVE OPERATORS FROM OBTAINING ALL OTHER NECESSARY AUTHORIZATIONS AND COMPLYING WITH ALL APPLICABLE FEDERAL AVIATION REGULATIONS.  ALL PREVIOUSLY ISSUED WAIVERS TO FDC NOTAM 4/4985 REMAIN VALID UNTIL THE SPECIFIED END DATE BUT NOT TO EXCEED 90 DAYS FOLLOWING THE EFFECTIVE DATE OF THIS NOTAM.  INFORMATION ABOUT AIRSPACE WAIVER APPLICATIONS AND TSA SECURITY AUTHORIZATIONS CAN BE FOUND AT HTTP://WWW.TSA.GOV/STAKEHOLDERS/AIRSPACE-WAIVERS-0 OR BY CALLING TSA AT 571-227-2071. SUBMIT REQUESTS FOR FAA AIRSPACE WAIVERS AT HTTPS://WAIVERS.FAA.GOV

Attachment B.

| Facility | States | Phone Number | EMail |
|----------|--------|--------------|-------|
| Western ROC | AK, AZ, CA, CO, HI, ID, MT, NV, OR, UT, WA and WY | 425-227-1999 | 9-WSA-OPSCTR@faa.gov |
| Central ROC | AR, IA, IL, IN, KS, LA, MI, MN, MO, ND,  NE, NM, OH, OK, SD, TX and WI | 817-222-5006 | 9-CSA-ROC@faa.gov |
| East ROC | AL, CT, FL, GA, KY, MA, ME, MS, NC, NH, PR, RI, SC, TN, VI and VT | 404-305-5180 | 9-ASO-ROC@faa.gov |
| East ROC | DC, DE, MD, NJ, NY, PA, VA and WV | 404-305-5150 | 7-AEA-ROC@faa.gov |

# Law Enforcement Assistance Program



## Joint Security and Hazardous Materials Safety Office—West (AHW)

**LEAP Branch Manager**
(425) 227-1217

**Seattle, WA**
Special Agent
(Washington, Idaho, Northern Oregon, Montana, Wyoming and Alaska)
(425) 227-2709

**Sacramento, CA**
Special Agent
(Northern Nevada, Northern California, and Southern Oregon)
(916) 956-8830

**Los Angeles, CA**
Special Agent
(Southern California, Southern Nevada, Colorado, and Guam)
(310) 725-3737

**Phoenix, AZ**
Special Agent
(Arizona, Utah, Hawaii)
(602) 721-6091

**International Area of Responsibility (AOR):**
· Canada (British Columbia, Alberta, Saskatchewan, Yukon)
· Asia, Australia, New Zealand, India, and Pacific Islands

## Joint Security and Hazardous Materials Safety Office—Central (AHC)

**LEAP Branch Manager**
(817) 222-5969

**Chicago, IL**
Special Agent
(Illinois, Indiana, Michigan, Minnesota, Ohio, Wisconsin)
(847) 343-3860

**Kansas City, MO**
Special Agent
(Iowa, Kansas, Missouri, Nebraska, North Dakota, South Dakota)
(816) 329-3717

**Fort Worth, TX**
Special Agent
(Arkansas, Louisiana, Oklahoma, New Mexico, Texas)
(817) 222-5713
(817) 222-5742

**International AOR:**
· Canada (Manitoba, Ontario)
· Mexico

## National Headquarters

**Investigation Programs and Operations Division Manager**
(202) 267-2480

**LEAP Program Manager**
(202) 267-4641

## Joint Security and Hazardous Materials Safety Office—East (AHE)

**LEAP Branch Manager**
(404) 305-6816

**Burlington, MA**
Special Agent
(Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont)
(781) 238-7704

**Mid-Atlantic**
Special Agent
(Delaware, Maryland, New Jersey, New York, Pennsylvania)
(404) 305-6816

**Atlanta, GA**
Special Agent
(Alabama, Mississippi, Tennessee, Virginia, West Virginia, Kentucky, Georgia, North Carolina and South Carolina)
(404) 305-6807
(404) 305-6759

**Orlando, FL**
Special Agent
(North Florida)
(404) 430-1365

**Miami, FL**
Special Agent
(South Florida, Puerto Rico, Virgin Islands)
(305) 716-3332 X 204

**International AOR:**
· Canada (Quebec, Nova Scotia, Newfoundland)
· Europe, Middle East, Africa, Central America, South America, and the Caribbean

Attachment C.