```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
```

```
                                )
MICHAEL S. SINGER,              )
                                )
            Plaintiff,          )
                                )       CIVIL ACTION
            v.                  )       No. 17-10071-WGY
                                )
CITY OF NEWTON,                 )
                                )
            Defendant.          )
                                )
```

YOUNG, D.J.                                September 21, 2017

**FINDINGS OF FACT, RULINGS OF LAW, & ORDER**

## I. INTRODUCTION

The crux of this dispute is whether portions of a certain ordinance (the "Ordinance") passed by the City of Newton ("Newton") on December 19, 2016 are preempted. First Am. Compl. Declaratory and Injunctive Relief, ECF No. 12. Michael S. Singer ("Singer") challenges portions of the Ordinance which require that all owners of pilotless aircraft (commonly referred to as "drones" or "UAS") register their pilotless aircraft with Newton, and also prohibit operation of pilotless aircraft out of the operator's line of sight or in certain areas without permit or express permission. Id.; Def. City Newton's Mem. Law Supp. Cross Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., Ex. 2, Newton Ordinances § 20-64, ECF No. 40-3.

In early March, Newton answered Singer's complaint, Answer Def. City of Newton First Am. Compl., ECF No. 17, and both parties appeared before the Court soon after, when they agreed to cross-file motions for summary judgment and proceed on a case stated basis,[1] Electronic Clerk's Notes, ECF No. 21.  Both parties subsequently filed motions for summary judgment, Pl.'s Corrected Mot. Summ. J., ECF No. 34; Def. City of Newton's Cross Mot. Summ. J., ECF No. 39, and fully briefed the issues, Pl.'s Corrected Mem. Supp. Mot. Summ. J. ("Pl.'s Mem."), ECF No. 35; Pl.'s Resp. Def.'s Cross-Mot. Summ. J. ("Pl.'s Resp."), ECF No. 50; Pl.'s Resp. City's Statement Undisputed Facts ("Pl.'s Resp. Facts"), ECF No. 51; Def. City Newton's Mem. Law Supp. Cross Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J. ("Def.'s Mem."), ECF No. 40; Def. City of Newton's Statement Undisputed Facts Supp. Cross Mot. Summ. J. and Resps. Pl.'s Statement Undisputed Material Facts Supp. Mot. Summ. J. ("Def.'s Facts"), ECF No. 41;

---

[1] The case stated procedure allows the Court, with the parties' agreement, to render a judgment based on the largely undisputed record in cases where there are minimal factual disputes.  TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007).  In its review of the record, "[t]he [C]ourt is . . . entitled to 'engage in a certain amount of factfinding, including the drawing of inferences.'"  Id. (quoting United Paperworkers Int'l Union Local 14 v. International Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)).

see also Amici Curiae Br. ("Amicus Br."), ECF No. 57.[2] After oral argument on June 13, 2017, this Court took the matter under advisement. Electronic Clerk's Notes, ECF No. 59.

## II. FINDINGS OF FACT

Newton is a municipality in the Commonwealth of Massachusetts and is organized under a charter pursuant to the Home Rule Amendment of the Massachusetts Constitution. Pl.'s Resp. Facts ¶ 1; Def.'s Facts ¶ 1. Singer resides in Newton. Am. Compl. ¶ 22. He is a Federal Aviation Administration ("FAA")-certified small unmanned aircraft pilot and owns and operates multiple drones in Newton. Id. ¶¶ 22, 25. Singer does not operate or register his drones as a hobbyist. Tr. Case-Stated Hearing ("Tr.") 20:15-18, ECF No. 60.

In August 2015, members of Newton's City Council proposed discussing the possibility of regulating drones for the principal purpose of protecting the privacy interests of Newton's residents. Pl.'s Resp. Facts ¶ 3; Def.'s Facts ¶ 3. On March 23, 2016, an initial draft of the Ordinance was presented for discussion. See Def.'s Mem., Ex. 3, Public Safety & Transportation Committee Report dated Mar. 23, 2016 1, ECF No. 40-4. Following further inquiry and amendment, see, e.g.,

---

[2] The Court gratefully acknowledges the helpful brief amicus curiae filed by the Consumer Technology Association and the Association for Unmanned Vehicle Systems International.

Def.'s Mem., Ex. 7, Public Safety & Transportation Committee Report dated May 5, 2016 1, ECF No. 40-8; Def.'s Mem., Ex. 9, Public Safety & Transportation Committee Report dated Sept. 7, 2016 6-7, ECF No. 40-10, but without FAA approval, Def.'s Mem., Ex. 16, Def. City of Newton's Answers Pl.'s First Set Interrogs. ("Def.'s Answers Interrogs.") 3, ECF No. 40-17, Newton's City Council approved the final Ordinance on December 19, 2016, Def.'s Mem., Ex. 12, Public Safety & Transportation Committee Report dated Dec. 19, 2016 1, ECF No. 40-13.

The Ordinance states in part:

> Purpose: The use of pilotless aircraft is an increasingly popular pastime as well as learning tool.  It is important to allow beneficial uses of these devices while also protecting the privacy of residents throughout the City.  In order to prevent nuisances and other disturbances of the enjoyment of both public and private space, regulation of pilotless aircraft is required.  The following section is intended to promote the public safety and welfare of the City and its residents.  In furtherance of its stated purpose, this section is intended to be read and interpreted in harmony with all relevant rules and regulations of the Federal Aviation Administration, and any other federal, state and local laws and regulations.

Def.'s Mem., Ex. 2, Newton Ordinances § 20-64, ECF No. 40-3. "Pilotless aircraft" is defined as "an unmanned, powered aerial vehicle, weighing less than 55 pounds, that is operated without direct human contact from within or on the aircraft." Id. § 20-64(a).  In section (b), the Ordinance imposes certain registration requirements upon owners of all pilotless aircraft. Id. § 20-64(b).  Section (c) sets forth operating prohibitions,

[4]

including, inter alia, a ban on the use of a pilotless aircraft below an altitude of 400 feet over private property without the express permission of the owner of the private property, id. § 20-64(c)(1)(a), "beyond the visual line of sight of the Operator," id. § 20-64(c)(1)(b), "in a manner that interferes with any manned aircraft," id. § 20-64(c)(1)(c), over Newton city property without prior permission, id. § 20-64(c)(1)(e), or to conduct surveillance or invade any place where a person has a reasonable expectation of privacy, id. § 20-64(c)(1)(f)-(g). Violations of the Ordinance are punishable by a $50 fine following a one-time warning.  Id. § 20-64(f).

**III. RULINGS OF LAW**

Specifically, Singer challenges four subsections of the Ordinance: the registration requirements of section (b) and the operation limits of subsections (c)(1)(a), (c)(1)(b), and (c)(1)(e).  Pl.'s Mem 3-4; Pl.'s Resp. i.  Singer argues that the Ordinance is preempted by federal law because it attempts to regulate an almost exclusively federal area of law, Pl.'s Mem. 6-15, in a way that conflicts with Congress's purpose, id. at 14-15.  In turn, Newton posits that the Ordinance is not preempted by federal law because it falls within an area of law that the FAA expressly carved out for local governments to regulate, Def.'s Mem. 8-10, and thus can be read in harmony with federal aviation laws and regulations, id. at 10-11.

[5]

### A.   Preemption Standards

The Supremacy Clause of the United States Constitution provides that federal laws are supreme, U.S. Const. art. VI, cl. 2, thus requiring that federal laws preempt any conflicting state or local regulations, see Maryland v. Louisiana, 451 U.S. 725, 746 (1981) (citing McCulloch v. Maryland, 4 Wheat. 316, 427 (1819)).  Under our federalist system, however, a court must be wary of invalidating laws in areas traditionally left to the states unless the court is entirely convinced that Congress intended to override state regulation.  See, e.g., Gregory v. Ashcroft, 501 U.S. 452, 460 (1991) (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 243 (1985)).  In contrast, if a state government attempts to regulate an area traditionally occupied by the federal government, a court need not seek to avoid preemption.  See United States v. Locke, 529 U.S. 89, 108 (2000).  Neither of these circumstances requires that Congress explicitly have stated its purpose; "[t]he question, at bottom, is one of statutory intent."  Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992).

If Congress has not expressly preempted an area of law, then a court must determine whether field or conflict preemption is evident.  See French v. Pan Am Express, Inc., 869 F.2d 1, 2 (1st Cir. 1989).  Field preemption occurs where federal regulation is so pervasive and dominant that one can infer

[6]

Congressional intent to occupy the field.  See Massachusetts Ass'n of Health Maint. Orgs. v. Ruthardt, 194 F.3d 176, 179 (1st Cir. 1999) (citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947); French, 869 F.2d at 2).  Conflict preemption arises when compliance with both state and federal regulations is impossible or if state law obstructs the objectives of the federal regulation.  See Grant's Dairy – Me., LLC v. Commissioner of Me. Dept. of Agric., Food & Rural Res., 232 F.3d 8, 15 (1st Cir. 2000) (citing Gade v. National Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)).

### B. The Federal Aviation Administration

Congress has stated that "[t]he United States Government has exclusive sovereignty of airspace of the United States."  49 U.S.C. § 40103(a)(1).  This declaration does not preclude states or municipalities from passing any valid aviation regulations, see Braniff Airways v. Nebraska State Bd. of Equalization & Assessment, 347 U.S. 590, 595 (1954), but courts generally recognize that Congress extensively controls much of the field, see, e.g., Chicago & S. Air Lines, Inc. v. Waterman Steamship Corp., 333 U.S. 103, 105, 107 (1948); United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 336 (1st Cir. 2003).  Accordingly, where a state's exercise of police power infringes upon the federal government's regulation of aviation, state law

is preempted.  See City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 638-39 (1973).

In the FAA Modernization and Reform Act of 2012, Congress directed the FAA to "develop a comprehensive plan to safely accelerate the integration of civil unmanned aircraft systems into the national airspace system," FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95 § 332, 126 Stat. 11, 73 (2012) (codified at 49 U.S.C. § 40101 note), while limiting the FAA from "promulgat[ing] any rule or regulation regarding a model aircraft," id. § 336(a).  Under this directive, the FAA promulgated 14 C.F.R. part 107, which declares that it "applies to the registration, airman certification, and operation of civil small unmanned aircraft systems[3] within the United States."  14 C.F.R. § 107.1(a).  The rule requires, inter alia, that anyone controlling a small unmanned aircraft system register with the FAA, id. §§ 91.203, 107.13; and keep the aircraft within the visual line of sight of the operator or a designated visual observer, id. §§ 107.3, 107.31, and below an altitude of 400 feet above ground level or within a 400 foot radius of a structure, id. § 107.51(b).

---

[3] The FAA defines "small unmanned aircraft" as "an unmanned aircraft weighing less than 55 pounds on takeoff, including everything that is on board or otherwise attached to the aircraft," and "small unmanned aircraft system" as "a small unmanned aircraft and its associated elements."  14 C.F.R. § 107.3.

[8]

### C. Field Preemption

Singer argues that because the federal government regulates unmanned aircraft and local aircraft operations, there is federal intent to occupy the field. Pl.'s Mem. 6-11; Pl.'s Resp. 3; see also Amicus Br. 7-29. Newton does not challenge that aviation is a traditionally federal field, but counters that federal regulations explicitly grant local authorities the power to co-regulate unmanned aircraft. Def.'s Mem. 8-11.

The FAA has stated:

> [C]ertain legal aspects concerning small UAS use may be best addressed at the State or local level. For example, State law and other legal protections for individual privacy may provide recourse for a person whose privacy may be affected through another person's use of a UAS.
>     . . . The Fact Sheet also summarizes the Federal responsibility for ensuring the safety of flight as well as the safety of people and property on the ground as a result of the operation of aircraft. Substantial air safety issues are implicated when State or local governments attempt to regulate the operation of aircraft in the national airspace. The Fact Sheet provides examples of State and local laws affecting UAS for which consultation with the FAA is recommended and those that are likely to fall within State and local government authority. For example, consultation with FAA is recommended when State or local governments enact operation UAS restrictions on flight altitude, flight paths; operational bans; or any regulation of the navigable airspace. The Fact Sheet also notes that laws traditionally related to State and local police power -- including land use, zoning, privacy, trespass, and law enforcement operations -- generally are not subject to Federal regulation.

81 Fed. Reg. 42063 § (III)(K)(6). Thus, the FAA explicitly contemplates state or local regulation of pilotless aircraft, defeating Singer's argument that the whole field is exclusive to

the federal government.  The FAA's guidance, however, does not go quite as far as Newton argues -- rather than an express carve-out for state and localities to regulate, the guidance hints that whether parallel regulations are enforceable depends on the principles of conflict preemption.[4]

### D.   Conflict Preemption

Singer argues that the challenged sections of the Ordinance obstruct federal objectives and directly conflict with federal regulations.  Pl.'s Mem. 11-17.  Newton fails to respond specifically to these arguments, again asserting that the FAA has granted states and localities the power to co-regulate pilotless aircraft.  Def.'s Mem. 8-11.  The Court addresses each challenged subsection of the Ordinance in turn.

#### 1.   Section (b)

Singer argues that section (b) of the Ordinance infringes upon and impermissibly exceeds the FAA's exclusive registration requirements.  Pl.'s Mem. 11-15; Pl.'s Resp. 6-7.  Section (b) states: "Owners of all pilotless aircraft shall register their pilotless aircraft with the City Clerk's Office, either individually or as a member of a club . . . ."  Newton Ordinances § 20-64(b).  The Ordinance defines "pilotless

---

[4] In fact, Newton has acknowledged that "[c]ommercial drone use is heavily regulated by the FAA [and] pre-empted from municipal regulations."  Public Safety & Transportation Committee Report dated Mar. 23, 2016 3.

aircraft" as "an unmanned, powered aerial vehicle, weighing less than 55 pounds, that is operated without direct human contact from within or on the aircraft." Id. § 20-64(a).

The FAA has also implemented mandatory registration of certain drones. See 14 C.F.R. §§ 48.1-48.205. Although such registration initially applied both to model and commercial drones, the FAA may not require registration of model aircraft, because doing so would directly conflict with the Congressional mandate in the FAA Modernization and Reform Act. See Taylor v. Huerta, 856 F.3d 1089, 1092, 1094 (D.C. Cir. 2017). Newton argues that this space creates a void in which the city may regulate drones. Tr. 9:5-10:1. The FAA, however, explicitly has indicated its intent to be the exclusive regulatory authority for registration of pilotless aircraft: "Because Federal registration is the exclusive means for registering UAS for purposes of operating an aircraft in navigable airspace, no state or local government may impose an additional registration requirement on the operation of UAS in navigable airspace without first obtaining FAA approval." Def.'s Mem., Ex. 14, State and Local Regulation of Unmanned Aircraft Systems (UAS) Fact Sheet[5] ("FAA UAS Fact Sheet") 2, ECF No. 40-15. Newton did

---

[5] Although the FAA UAS Fact Sheet is not a formal rule, it is the FAA's interpretation of its own rule, which this Court accords deference under Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14 (1945).

not obtain FAA approval before enacting the Ordinance.  Def.'s Answers Interrogs. 3.  Further, regardless of whether there is some space that would allow Newton to require registration of model drones, here Newton seeks to register **all** drones, Tr. 10:3-14, without limit as to the at which altitude they operate, in clear derogation of the FAA's intended authority.  Accordingly, the Ordinance's registration requirements are preempted.

### 2.  Subsections (c)(1)(a) and (c)(1)(e)

Singer argues that subsections (c)(1)(a) and (c)(1)(e) conflict with FAA-permitted flight, Pl.'s Mem. 11, and restrict flight within the navigable airspace, id. at 12-14.  Subsection (c)(1)(a) prohibits pilotless aircraft flight below an altitude of 400 feet over any private property without the express permission of the property owner.  Newton Ordinances § 20-64(c)(1)(a).  Subsection (c)(1)(e) prohibits pilotless aircraft flight over public property without prior permission from Newton.  Id. § 20-64(c)(1)(e).  Notably, subsection (c)(1)(e) does not limit its reach to any altitude.  See id.  This alone is a ground for preemption of the subsection because it certainly reaches into navigable airspace, see 49 U.S.C. § 40102(a)(32); 14 C.F.R. § 91.119.  Subsections (c)(1)(a) and (c)(1)(e) work in tandem, however, to create an essential ban on drone use within the limits of Newton.  Nowhere in the city may

an individual operate a drone without first having permission from the owner of the land below, be that Newton or a private landowner.

The FAA is charged with "prescrib[ing] air traffic regulations on the flight of aircraft . . . for --
(A) navigating, protecting, and identifying aircraft;
(B) protecting individuals and property on the ground; [and]
(C) using the navigable airspace efficiently."  49 U.S.C. § 40103(b)(2).  In 2012, Congress tasked the FAA with "develop[ing] a comprehensive plan to safely accelerate the integration of civil unmanned aircraft systems into the national airspace system."  Pub. L. No. 112-95 § 332.  In so doing, the FAA mandated that drone operators keep drones below an altitude of 400 feet from the ground or a structure.  14 C.F.R. § 107.51(b).  Newton's choice to restrict any drone use below this altitude thus works to eliminate any drone use in the confines of the city, absent prior permission.  This thwarts not only the FAA's objectives, but also those of Congress for the FAA to integrate drones into the national airspace.  Although Congress and the FAA may have contemplated co-regulation of drones to a certain extent, see 81 Fed. Reg. 42063 § (III)(K)(6), this hardly permits an interpretation that essentially constitutes a wholesale ban on drone use in Newton.  Accordingly, subsections (c)(1)(a) and (c)(1)(e) are preempted.

[13]

### 3. Subsection (c)(1)(b)

Singer argues that subsection (c)(1)(b) conflicts with the FAA's visual observer rule and related waiver process, which only the FAA can modify.  Pl.'s Mem. 13 (citing 49 U.S.C. § 106(f)(2), (g)(1); 14 C.F.R. §§ 107.31, 107.205).  Subsection (c)(1)(b) states that no pilotless aircraft may be operated "at a distance beyond the visual line of sight of the Operator." Newton Ordinances § 20-64(c)(1)(b).  The Ordinance neither defines the term "Operator," nor sets an altitude limit.

The FAA "requires a delicate balance between safety and efficiency, and the protection of persons on the ground . . . . The interdependence of these factors requires a uniform and exclusive system of federal regulation."  City of Burbank, 411 U.S. at 638-39 (internal citations omitted).  The Ordinance seeks to regulate the method of operating of drones, necessarily implicating the safe operation of aircraft.  Courts have recognized that aviation safety is an area of exclusive federal regulation.  See, e.g., Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n, 634 F.3d 206, 208 (2d Cir. 2011) ("Congress has established its intent to occupy the entire field of air safety, thereby preempting state regulation of that field."); US Airways, Inc. v. O'Donnell, 627 F.3d 1318, 1326 (10th Cir. 2010) ("[F]ederal regulation occupies the field of aviation safety to the exclusion of state regulations.");

[14]

Montalvo v. Spirit Airlines, 508 F.3d 464, 470 (9th Cir. 2007) ("Congress has indicated its intent to occupy the field of aviation safety."). The First Circuit, in fact, has ruled "that Congress intended to occupy the field of pilot regulation related to air safety." French, 869 F.2d at 4. In French, the First Circuit took note of Congress's delegation of authority to the FAA to issue the certificate -- and the terms for obtaining it -- required for any person to pilot a commercial aircraft. See id. at 3. Concluding that this grant of authority and the FAA's subsequent regulations expressed Congress's intent to preempt any state law in the area, id. at 4, the First Circuit struck down Rhode Island's statute requiring airline pilots to submit to drug testing, see id. at 7.

The circumstances are not so different here. Congress has given the FAA the responsibility of regulating the use of airspace for aircraft navigation and to protect individuals and property on the ground, 49 U.S.C. § 40103(b)(2), and has specifically directed the FAA to integrate drones into the national airspace system, Pub. L. No. 112-95 § 332. In furtherance of this duty, the FAA has designated specific rules regarding the visual line of sight for pilotless aircraft operation. See 14 C.F.R. §§ 107.31-35, 107.205. First, the FAA requires either that (1) a remote pilot both command and manipulate the flight controls or (2) a visual observer be able

to see the drone throughout its flight. Id. § 107.31. The regulations define "visual observer" as "a person who is designated by the remote pilot in command to assist the remote pilot in command and the person manipulating the flight controls of the small UAS to see and avoid other air traffic or objects aloft or on the ground." Id. § 107.3. Second, the FAA allows waiver of the visual observer rule. Id. §§ 107.200, 205.

The Ordinance limits the methods of piloting a drone beyond that which the FAA has already designated, while also reaching into navigable space. See Newton Ordinances § 20-64(c)(1)(b). Intervening in the FAA's careful regulation of aircraft safety cannot stand; thus subsection (c)(1)(b) is preempted.

## IV. CONCLUSION

For the foregoing reasons, this Court holds that Ordinance sections (b), (c)(1)(a), (c)(1)(b), and (c)(1)(e) are preempted and judgment will enter so declaring. As it is unchallenged, the remainder of Newton's Ordinance stands. Of course, nothing prevents Newton from re-drafting the Ordinance to avoid conflict preemption.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE